[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff brings this claim against the defendants in five counts: the first count in fraudulent misrepresentation against both defendants, the second count in breach of oral contract against the defendant Eastern Financial Group, LLC (Eastern); the third count in breach of oral contract against the defendant Dale Quesnel (Quesnel); the fourth Count in breach of fiduciary duty against Quesnel, and the fifth count is slander per se against Quesnel. The fourth and fifth counts of breach of fiduciary duty and slander respectively have been withdrawn by the plaintiff in his Trial Brief dated May 7, 2001, pg. 1, footnote 1. Beside essentially denying any misrepresentation or oral contract which was breached by the defendants, the defendants have alleged three (3) special defenses: (1) illegal conduct by the plaintiff which jeopardized the continued relationship by the defendants' affiliation with the plaintiff; (2) that payment of any claimed expenditure by the plaintiff has been paid; and (3) setoff. The defendant Quesnel also has filed three (3) counterclaims; (1) breach of their oral agreement to share the fee as to one of their joint clients; (2) breach of their oral agreement to share the cost of renovation of the new office of a limit of $3,700 by CT Page 6993 causing a more luxurious office space requiring Quesnel to take time away from his business in performing the necessary work of renovation and the plaintiff, through his improper and illegal conduct caused the defendant to remove him from the office and required him the additional expense for operation and (3) slander per se.
The plaintiff and Quesnel, as produced by the evidence, both worked in the financial services business. In 1994 they met each other while working at Shawmut Bank as investment representatives. Subsequently the defendant was hired by Penn Mutual in its East Hartford office as an equities coordinator supervising the activities of approximately ten (10) representatives in that office. At that time he was operating a sole proprietorship known as Eastern Financial Group, LLC from an office in Enfield. In 1997 the plaintiff began to work at Penn Mutual in the same East Hartford office as Quesnel. Sometime before April 1998 the plaintiff had an individual client who received his services as a financial planner. The plaintiff conferred about a plan with Quesnel which was submitted to his clients, Mr. And Mrs. Kenneth Otto which resulted in a $39,000 commission. Quesnel claims that the plaintiff agreed to split such commission equally. Otto testified that the plaintiff was his financial planner and that he only met Quesnel once at his home when the plaintiff had visited him about his investment. He believed Quesnel wrote insurance. The plaintiff denies that he even had any discussion of a payment to Quesnel from that commission. On April 29, 1998 plaintiff did make out a check for $5,000 payable to Quesnel but said it was as a loan.
Sometime in late summer or early fall of 1998 after the plaintiff had left Penn Mutual Quesnel offered him the use of his office in Enfield to conduct his business. It became obvious that the office was too small for both of them and they agreed to look for larger quarters. Meantime Penn Mutual closed the office where Quesnel worked. In December 1998 a lease was signed by Quesnel as president of Eastern Financial Group, LLC for space in Enfield Plaza known as 630 Enfield Street. Both Quesnel and the plaintiff signed personally as guarantors. See Plaintiff's Exhibit 5. Robert Mercik, an owner of Enfield Plaza believed the two were principals of Eastern, as did Diane Johnson who testified and Robie Staples, their contractor. During 1998 and January of 1999 the plaintiff claimed to have given loans to Quesnel which have not been repaid. See Plaintiff'sExhibits 1, 2, 4, 8 and 12. The total for said loans is $6,749. After the signing of the lease the plaintiff claimed that he made payments by check for security deposits, for rent of $1,200, for Northeast Utilities of $500.00 and Yankee Gas of $800.00. See Plaintiff's Exhibit 7, 14 and 15
to R R Construction Company of $9,250, See Plaintiff's Exhibit 9, for furniture of $7,272.60, See Plaintiffs Exhibits 10 and 13 and for carpeting of $2,504.00. See Plaintiff's Exhibit 11. During this same CT Page 6994 period from January 1999 through June 1999 the plaintiff claims to have paid to Home Depot for construction material a sum of $24,000 and for rent and utilities a sum of $14,000 and also paid for advertising the products sold by Eastern. Despite the business operation he was not made aware of any walk-ins or telephone callers as to new business. There were only six (6) to ten (8) shared accounts by April 1999 even though Quesnel provided the plaintiff with a business card as vice-president of Eastern. SeePlaintiff's Exhibit 6. The defendant was paying for a part-time bookkeeper and the telephone bills. He also paid fees and costs for Eastern as to an attorney, Secretary of State, Town, Printer and Treasurer of the State. See Defendant's Exhibit B.
In April the plaintiff sent Quesnel a letter requesting that they sit down with their attorney and determined how all new business will fall under both names, open a business account and assure that both receive income equally and pay expenses equally and that this is not being accomplished when the business generated by plaintiff has both names on it but there are none from the defendants. See Plaintiff's Exhibit 16. Quesnel's response was that there was never any agreement to share income but that each would have their own separate business and that Eastern was a business vehicle for defendants. The agreement was that Quesnel and the plaintiff would pay for the office operation equally. His ultimate response was to lock the plaintiff out of the space. See Plaintiff'sExhibit 17, and to mail a non-compliance complaint to Homer, Townsend and Kent, Inc. with whom both the plaintiff and Quesnel had contracts to sell securities. See Plaintiff's Exhibit 21.
The essential elements of a cause of action in fraud are: (1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon that false representation to his injury. Anastasia v. Beautiful You HairDesign, Inc., El Conn. App. 471, 477. Quesnel admitted that he had agreed for himself and Eastern to share equally with the plaintiff the expenses of the office operation but only paid for the bookkeeper, telephone and fees of Eastern. As soon as the plaintiff requested an accounting, Quesnel locked him out. His credibility was further damaged by testifying at his deposition that the $5,000 check was a loan and then claiming here on trial that it was in payment of a split commission on the Otto investment. The court believes the testimony of the plaintiff that new business was to be shared as well, although the plaintiff made no provision how this was to be accomplished. Quesnel obviously had no intent to share either expenses or income with the plaintiff and had made the statements to induce the plaintiff to fund the expenses of setting up the office and was aware how to get rid of him as he did. CT Page 6995
Because of the lockout of the plaintiff, the court finds that the plaintiff suffered damages of $29,775.00 which are the payments of loans, construction costs, purchase of furniture, payment of security in rent and utilities, carpeting and a sum of $1,500 paid in rent in accordance with the lease. The court cannot find a sufficient basis of proof as to his Home Depot purchases of $27,000 nor his loss of income. Likewise the court cannot find sufficient proof as to any of the defendants' special defenses and additionally as to Special Defenses 2 and 3 the defendants were the beneficiary not a loser in locking out the plaintiff. As to Quesnel's counterclaims, as to (1) there was no agreement to share the Otto commission, (2) there is no basis to determine a limit of renovation when Quesnel claimed a $9,000 "sweat" contribution nor any proof of a loss of income and (3) there was no evidence presented as to a cause of action as to slander of Quesnel.
As to the second and third counts of breach of oral contract the court as stated as to the first count has found that there were promises made to share expenses and certain income in a business operation which Quesnel individually and as president of Eastern breached by his act of locking the plaintiff out. The damages found in the first count would likewise apply to the second and third counts.
For the above reasons the court grants judgment as against both defendants in favor of the plaintiff in the sum of $29,775.00.
Corrigan, J.